IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

      v.                                                            20-CR-19-RJA

PETER HINGSTON,

               Defendant.

---

### GOVERNMENT'S AMENDED SENTENCING MEMORANDUM and RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM

**THE UNITED STATES OF AMERICA,** by and through its attorney, Trini E. Ross., United States Attorney for the Western District of New York, and the undersigned Assistant United States Attorney, Michael DiGiacomo, respectfully submits this amended memorandum as the Government's Sentencing Memorandum in support of the government's sentencing recommendation and in response to the Defendant's Sentencing Memorandum.

### SUMMARY ARGUMENT

The defendant's conduct warrants nothing less than a Guideline sentence of 210-240 months imprisonment. Such a sentence would be neither shockingly high, nor otherwise unsupportable as a matter of law.

## STATEMENT OF FACTS

**A. Procedural History:**

The defendant, pursuant to the terms and conditions of a written agreement, pleaded guilty to a Superseding Information which charged two counts of possessing child pornography (PSR ¶ 1)[1].

Under to the terms and conditions of the plea agreement the parties agreed, that pursuant to Guidelines §1B1.2 that the Sentencing Guideline range for imprisonment and fine shall be determined if the defendant were convicted of violating two counts of production of child pornography [Title 18, United States Code, Section 2251(a)] as it relates to minor victim 1 and 2 (Dkt.41 ¶ 11).

Also, under the terms and conditions of the plea agreement, the defendant stipulated that the conduct contained in paragraphs 9j and 9k shall be treated, pursuant to Sentencing Guidelines §1b1.2(c), as if the defendant had been convicted of violating three additional counts of Title 18, United States Code, Section 2251(a), production of child pornography (Dkt.41 ¶ 12).

Both the plea agreement and the Pre-Sentence Investigation Report calculated the defendant's base offense level of 37, after a three-level reduction for acceptance of responsibility. With a criminal history category of I, the defendant's Guideline imprisonment range as 210 months to 262 months. However, since the authorized statutory maximum

---

[1] PSR followed by a number refers to paragraph in Pre-Sentence Investigation Report prepared by the United States Probation Department.

sentences are less than the applicable Guideline range the defendant's Guideline range of imprisonment is 210 months to 240 months (PSR ¶ 111 and Dkt. 41 ¶ 19).

**B.  Background of the Offense:**

The defendant was employed as a teacher with the Buffalo Public School System from October 19, 1992 until he retired on September 2, 2020.  For 15 years prior to his retirement the defendant worked at City Honors School as a technology education teacher (PSR ¶ 143).

During the 2018 and 2019 school year the defendant was a technology teacher.  On June 17, 2019, school officials called the Buffalo Police Department based on student allegations that the defendant was taking inappropriate photographs of female students in his classroom with a GoPro camera.  The defendant voluntarily turned the GoPro camera over to the officers. The GoPro camera was subsequently turned over to the FBI based on the incident relating to the production of child pornography (PSR ¶17-18).

As part of the investigation multiple students were interviewed and each one observed the defendant taking inappropriate photographs or videotaping minor female students.

One witness described how they observed the defendant place the camera under a table and aim it up a minor female's skirt; how they observed the defendant photograph a minor female's buttocks and walk around the classroom with an erection.  The defendant's conduct made this witness so uncomfortable that they screamed in disgust and cried after having to get away from the situation (PSR ¶19-22).

A second witness described how they observed the defendant, utilizing the GoPro Camera, photograph and videotape a minor female student's buttocks and breasts.   The defendant's conduct caused this witness to feel "creeped out and uncomfortable" (PSR ¶23-24).

A third witness described how they observed the defendant use the Go-Pro Camera to take photographs of minor female students and how on one occasion watched the defendant kneel down next to a student and slide the camera underneath the student.   The defendant's conduct caused this witness to panic and feel angry (PSR ¶25).

A fourth witness described how they observed the defendant hide the Go-Pro camera behind a piece of paper and photograph the breasts of a minor female student. They also described how the defendant would walk around the classroom with an erection.   This witness described the defendant's conduct as "gross" (PSR ¶26-27).

A subsequent search of the GoPro camera and external hard drive possessed by the defendant revealed videos of the defendant involving or attempting to involve five minor female students, under his custody and control, in sexually explicit conduct.

The sexually explicit images depict the defendant, during the school day, take his erect penis from his pants and conceal it behind a piece of paper or file folder.  The defendant then approached an unsuspecting student from behind, begin to masturbate and then place and/or rub his erect penis into their hair. In another video the defendant is observed engaging in the

same conduct but in this video, he ejaculates on the back of the minor female's shirt (PSR ¶ 30-31).

In addition, images of minor female students' breasts and buttocks along with upskirt photographs were recovered.  Also recovered were images of the defendant placing his penis in student's sandwich and masturbating with it, masturbating using female student's underwear, masturbating with a female student's batting glove, masturbating with toothbrushes, and placing his penis in a student's water bottles.

Besides, the videos of the defendant using female student's personal belonging to gratify himself, videos of the defendant in the bedroom of a minor female neighbor were recovered.  In these videos the defendant while wearing the minor female's underwear takes a necklace and places it over his erect penis and begins to masturbate on her bed.  In one video the defendant ejaculates on the minor females pillow and in another video ejaculates into what appears to be the minor female's undergarment drawer.

## DISCUSSION

Title 18, United States Code, Section 3553(a) requires that this Court "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)]." In determining the sentence, this Court must consider the following:

(1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)   the need for the sentence imposed--

    (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)    to afford adequate deterrence to criminal conduct;

    (C)    to protect the public from further crimes of the defendant; and

    (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    the kinds of sentences available;

(4)    the kinds of sentence and the sentencing range established for--

    (A)    the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

        (i)    Issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

        (ii)    that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

    (B)    In the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made by such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5)    Any pertinent policy statement --

    (A)    issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

         (B)    that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

    (6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

    (7)    the need to provide restitution to any victims of the offense. 18 U.S.C. §3553(a).

In executing these statutory responsibilities, the Court must first correctly calculate the applicable Guidelines range. Gall v. United States, 128 S.Ct. 586, 596 (2007). This range is "the starting point and the initial benchmark." Id. Although this Court must treat the Guidelines as advisory, an error in determining the applicable Guidelines range or the availability of departure authority nonetheless would be the type of procedural error that could render a sentence unreasonable on appellate review. United States v. Selioutsky, 409 F.3d 114, 118 (2d Cir. 2005).

The Court must then "consider all the § 3553(a) factors to determine whether they support the sentence requested by a party." Gall, 128 S.Ct. at 596. In determining whether the §3553(a) factors support the requested sentence, the Court "must make an individualized assessment based on the facts presented." Id., at 597. In that regard, "[n]o limitation shall be placed on the information concerning the background, character and conduct of a person convicted of an offense which a court . . . may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. §3661.

## ARGUMENT

The defendant's offense conduct, taken in conjunction with sentencing factors contained in Title 18, United States Code, Section 3553(a), warrants nothing less than a Guideline Sentence of 210-240 months imprisonment.

**Nature and Circumstances of the Offense**:

The defendant was a schoolteacher, with a long history of deviant sexual behavior, when he committed this horrifying offense. Rather than teach and keep safe the students he was entrusted to watch over, he decided to prey on unsuspecting minor female students and used them as sex objects to produce and attempt to produce child pornography.

When parents send their children off to school, they expect it to be a safe place where their children will grow and learn and not a place where their teacher will prey upon them and use them and their personal belongings for his own deviant sexual gratification.

The defendant's sentencing memorandum, although recognizing the conduct was inappropriate, attempts to mitigate the conduct under the auspice that some of the defendant's conduct was less egregious than other and that the targeted students were unaware of his unlawful actions.  Although the minor victims were unaware when the defendant used them for his sexual gratification, they nevertheless had to be shown sanitized versions of the defendant's conduct.  So, although they may have been unaware at the time of the occurrence, they certainly now know they were violated by their teacher for the rest of their life.

Furthermore, the court should give little to no weight to the defendant's argument that the most egregious conduct occurred to only seven female students.  The reason, no child should ever be subjected to being ejaculated on or having their hair used for sexual gratification.

While the conduct of masturbating and ejaculating on unsuspecting students, who were under the defendant's custody and control in and of itself is reprehensible, the brazen way the defendant undertook the conduct, compounds it.   The defendant's deviant sexual behavior occurred during the school day.  It involved him pulling out his erect penis and masturbating with a class full of students before placing his erect penis in an unsuspecting student's hair and masturbating and ejaculating on them.

The defendant further violated the students under his custody and control by taking personal items, such as sandwich's, underwear, water bottles and toothbrushes from their backpacks and/or gym bags to masturbate with and ejaculate on.  Examples of this conduct include a video of the defendant removing a batter's glove from a student's backpack and masturbating with it.  He then takes a pair of female underwear from the same backpack and continues to masturbate and eventually ejaculates on the underwear.  The defendant then places the items back in the backpack.  In another video the defendant states a name as he begins to masturbate using toothbrushes.  After masturbating with the toothbrushes, the defendant places the toothbrushes between a bra and ejaculates on the bra and toothbrushes.[2] The defendant, during his interview with probation, stated he obtained these items from the

---

[2] Although the government notes two examples the number of videos demonstrating this conduct is believed to exceed one hundred.

lost and found (PSR 64 ¶55).  However, this statement is not entirely true as there is evidence establishing items were taken from backpacks stored in the defendant's classroom.

This disgusting conduct resulted in unsuspecting students eating their lunch, putting on their underwear or drinking from water bottles that the defendant had his penis in or ejaculated on.

**History and Characteristics of the Defendant:**

The history and characteristics set forth in both the PSR and the May 24, 2022, report of Dr. Michael Rutter establish the defendant has a long-standing history of deviant sexual behavior. The defendant admitted to Dr. Rutter, that starting in middle school he would obtain women's undergarments for sexual gratification, occasionally putting them on and photographing himself masturbating.[3]  He also admitted how he continued in this behavior throughout his life by obtaining female intimate apparel from department stores, homes in which he was a guest, and the lost and found at school (PSR ¶137).

Although Dr. Rutter's report attempts to explain why the defendant engaged in such conduct, the government questions his findings/conclusions.   The government finds perplexing Dr. Rutter's conclusion that the defendant "is not a danger to himself or others… has no interest in being sexual with a child… and does not have sexually arousing fantasies, sexual urges or behaviors involving sexual activity with children." [See Rutter report pgs.11-13).   The government questions how Dr. Rutter can draw such a conclusion when the

---

[3] Dr. Michael Rutter is an expert hired by the defendant for the purpose of this litigation.

defendant used and touched minor victims to satisfy his deviant sexual cravings. It's apparent the defendant is attracted to children between the ages of 13 and 17 based on the age of the victims.[4] Minor Victim-1 was age 15 at the time of the offense, Minor Victim-2 was age 13, Minor Victim-3 was age 16, Minor Victim-4 was age 13 and Minor Victim-5 was age 17. Further it is unclear how the defendant is not considered a danger to others since he engaged in the conduct when the victims were under his custody and control.

The government also questions Dr. Rutter's conclusion that the defendant poses a low risk of recidivism. It is undisputed that the defendant's sexual urges progressed throughout his life from masturbating with women's undergarments, to masturbating to adult pornography, to using his GoPro camera to look under the skirts of minor female students, photographing minor female student's buttocks and breasts, to masturbating in the classroom and ultimately using minor female student's hair, underwear, and lunches and other personal items to masturbate with and ejaculate on.

What further makes the defendant a danger is his admission that he knew the conduct he was engaging in was wrong knowing he might have to go to jail for 1-2 years and lose his job (PSR ¶52-55). The government believes this speaks volumes on how the defendant put greater value on satisfying his deviant sexual needs over the long-term harm and consequences his behavior would have on his victims. What the government also views as telling, is the defendant's lack of remorse toward the victims. During the defendant's probation interview

---

[4] The government's original sentencing memorandum, based on ¶54 of Dkt.55, referenced an alleged admission the defendant made during his probation interview that he was attracted to girls between the ages of 13 to 17 years old with long hair. Counsel for the defendant subsequently conferred with the United States Probation officer and that admission was subsequently removed and an amended Presentence Investigative Report was filed (Dkt.57).

he showed little remorse for the victims.  All he said was "I didn't' mean to hurt anyone and I didn't' want them to know" (PSR ¶55).  It is only in the letters submitted on the defendant's behalf which claim the defendant stated he is remorseful.

No one will truly know the long-term effects the defendant's conduct will have on the victims and on those students who witnessed his behavior.  However, research has indicated that the long-term effects of sexual abuse include, but are not limited to, depression, PTSD, anxiety, and low self-esteem.

**Offense of Conviction is a Serious Offense:**

All child exploitation offenses are serious offenses.  What elevates the seriousness of this offense is the defendant was a teacher who preyed on unsuspecting minor female students, who were under his custody and control.

The defendant's sentencing memorandum and Dr. Rutter's report attempt to mitigate the defendant's conduct through letters which attempt to demonstrate the defendant's conduct was aberrant.  United States Guideline Section 5K2.20 states: "Except where a defendant is convicted of an offense involving a minor victim under chapter 110 a downward departure for aberrant behavior may be warranted…."  Since the defendant's convictions fall under chapter 110 of Title 18, the court may not consider such a departure.  Even assuming arguendo, the court considered this policy statement, the defendant's conduct fails to meet the requirements.  Aberrant behavior occurs when a defendant commits a single criminal occurrence, without significant planning and was limited in duration.  Here the defendant's

planned criminal conduct occurred over the 2018/2019 school year and involved multiple

victims.


The defendant also argues his cooperation in the investigation is a mitigating factor.

Although the defendant did cooperate by voluntarily providing and consenting to the search

of his electronics, he was afforded a benefit for this cooperation in the form of the plea.   Had

the defendant proceeded to trial and had he been convicted of any of the production of the

child pornography counts in the indictment; each count subjected the defendant to a

mandatory minimum term of imprisonment of 15 years with a maximum term of

imprisonment of 30 years (PSR ¶ 112).  The plea the government offered and entered into by

the defendant allowed the defendant to avoid a 15-year mandatory minimum sentence.

Furthermore, the plea lowered the defendant's advisory Guideline range of imprisonment

from 210-262 months to 210-240 months.


The defendant also asks this court to consider the factors in Fourth Circuit decision of

*United States v. Pauley, 511 F.3d 468 (4ᵗʰ Cir. 2007).*  This court should give this decision no

consideration since the facts in *Pauley* are very distinguishable from the facts before this court.

For example:

1.  In Pauley the minor victim approached Pauley and asked if he was interested in paying her money for nude photographs.  Here none of the victims approached the defendant and asked him if he was interested in paying money to place his penis in their hair and ejaculate on them.

2.  Here none of the victims approached the defendant and asked if he was interested in paying money to allow him to masturbate using their underwear or gratify himself with lunches and other personal belongings.

3. Here the defendant's conduct involved 5 or more victims where Pauley involved only one victim.

4. Unlike Pauley, the victim's faces do not appear in the recovered images because the defendant was only interested in videotaping his penis in the hair of victims or masturbating on them.

Based on the aforementioned a Guidelines sentence will promote respect for the law while providing just punishment and adequate deterrence to the conduct the defendant undertook.

A Guideline sentence will also provide the defendant with appropriate mental health treatment while protecting the public from further harm from the defendant. Although the government agrees that the defendant needs mental health treatment, it disagrees with Dr. Rutter's assessment that the defendant is low risk to re-offend. As previously noted in this submission the defendant's deviant sexual urges have progressed throughout his life from masturbating with women's undergarments, to masturbating to adult pornography, to using his GoPro camera to look under the skirts of minor female students, to photographing minor female student's buttocks and breasts, to masturbating in the classroom and ultimately using the minor female student's hair to masturbate and ejaculate on. Therefore, both the defendant and public will benefit from the defendant obtaining mental health treatment through the bureau of prisons.

## **CONCLUSION**

Based on the aforementioned, the government respectfully requests the court sentence the defendant to nothing less than a Guideline sentence of 210-240 months imprisonment.

14

Such a sentence will be sufficient but not greater than necessary to comply with purpose set forth in 18 U.S.C. §3553(a)(2), addresses the seriousness of the offense, promote respect for the law and provide an adequate deterrence for the conduct, while affording the defendant appropriate mental health treatment.

DATED:     Buffalo, New York, July 14, 2022.

TRINI E. ROSS
United States Attorney

BY:     ***S/MICHAEL DIGIACOMO***
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5700, ext. 885
Michael.DiGiacomo@usdoj.gov